UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

WAYNE ROSE,                              :

                    Plaintiff,      :    03 Civ. 1241 (GBD)(HBP)

     -against-                      :    REPORT AND
                                         RECOMMENDATION
DAVID BETHEL, SYLVIA WAY,           :
THE CITY OF NEW YORK, EVELYN
SANTIAGO and COLLEEN WALSH,         :

                    Defendants.     :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.  Introduction


          Defendants Evelyn Santiago and Colleen Walsh move for

summary judgment[1] dismissing the complaint against them on a

variety of grounds.  Plaintiff also cross-moves for summary

---

[1]Although Santiago and Walsh denominate their motion as a
motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), they have
submitted affidavits and exhibits, a statement of putatively
undisputed facts pursuant to Local Civil Rule 56.1 and the notice
to pro se litigants required by Local Civil Rule 56.2.  In
response, plaintiff has also submitted an affidavit and exhibits.
Since all parties to the motion have already submitted
evidentiary material that goes beyond the face of the complaint,
I construe the motion as seeking summary judgment pursuant to
Fed.R.Civ.P. 56.

judgment in his favor.[2]  For the reasons set forth below, I
respectfully recommend that Santiago and Watson's motion be
granted and that plaintiff's cross-motion be denied.

II.  <u>Facts</u>

A.  Plaintiff's Probation and
the Alleged Facts Giving Rise
<u>to Plaintiff's Two Actions</u>

At all relevant times, the <u>pro</u> <u>se</u> plaintiff was a
probationer as a result of his being convicted in New Jersey
state court; he resided and was being supervised in New York.
Plaintiff alleges that his constitutional rights were violated by
probation officers employed by both New York and New Jersey
through their commencement of baseless violation proceedings
against him.  He brings this action to redress those alleged
violations.[3]

In 1999 plaintiff was convicted in New Jersey Superior
Court, Hudson County, upon his guilty plea, of one count of child
abuse in the fourth degree and was sentenced to a term of proba-

---

[2]Plaintiff's papers do not delineate against which
defendants he seeks summary judgment; I assume he is seeking
summary judgment against Santiago and Walsh only.

[3]In light of plaintiff's <u>pro</u> <u>se</u> status, I construe his
complaint and other submissions liberally.  <u>Haines v. Kerner</u>, 404
U.S. 519, 520 (1972) (<u>per</u> <u>curiam</u>); <u>Ciak v. United States</u>, 59 F.3d
296, 306 n.9 (2d Cir. 1995), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>
<u>Mickens v. Taylor</u>, 535 U.S. 162 (2002); <u>Platsky v. Cent.</u>
<u>Intelligence Agency</u>, 953 F.2d 26, 28 (2d Cir. 1991).

tion of five years (Exhibit C to the Certification of Deputy

Attorney General Raymond C. Barzey, dated April 21, 2004, which

is annexed as Exhibit G to the Certification of Deputy Attorney

General Joseph I. Picillo, dated November 30, 2005 (Docket Item

23) ("Barzey Cert." and "Picillo Cert.," respectively); see

Picillo Cert. Ex. A ¶ 18).  One of the conditions of plaintiff's

probation endorsed on the judgment was that he pay a supervision

fee of $25.00 per month to the State of New Jersey (Picillo Cert.

Ex. A at ¶ 18).

          At some point prior to 2002, plaintiff's supervision

was transferred to the State of New York where plaintiff was then

residing.  The transfer was accomplished pursuant to an inter-

state compact for the supervision of parolees and probationers.

See N.J. Stat. Ann. 2A:168-14; N.Y. Exec. L. § 259-m.  Under the

compact, day-to-day supervision and visitation was performed by

the receiving state, i.e., New York.  Possible violations were

reported to the sending state, i.e., New Jersey, which determined

what action, if any, should be taken as a result of any viola-

tion.  See N.J. Stat. Ann. 2A:168-14(3); N.Y. Exec. L. § 259-

m(3).

          Although the judgment did not so indicate, the proba-

tion officers assigned to plaintiff's case took the position that

mental health counseling was a condition of plaintiff's proba-

tion.  Plaintiff alleges that he was directed to attend counsel-

ing sessions three times a week at a cost of $40 per session at a facility operated by a former probation officer -- William Ford -- and that the probation officers imposing this requirement received a kickback for the referral.  Plaintiff failed to attend these sessions, claiming that he was unable to afford them. Plaintiff did, however, offer to attend sessions at a different, more affordable facility.

On October 4, 2002, plaintiff commenced an action against Santiago, Walsh and others in the United States District Court for the Eastern District of New York (the "Eastern District Action") (Rose v. Goldman, et al., Docket No. CV-02-5370, annexed as Exhibit A to Picillo Cert.).  In that complaint, plaintiff alleged that the defendants, in bad faith, caused a warrant to issue for his arrest for failure to pay the supervision fee despite the fact that he was financially unable to do so (Picillo Cert. Ex. A at ¶¶ 18-21).  Plaintiff further alleged that his personal medical information was improperly disclosed to defendant Ford, that a New York Probation Officer, Robert Goldman, demanded that plaintiff attend treatment sessions at Ford's facility in order to receive kickbacks from Ford, that Goldman caused false violation reports to be filed with the New Jersey Probation authorities and that violation proceedings were commenced against him in retaliation for his claiming that Ford and

Goldman were involved in a kickback scheme[4] (Picillo Cert. Ex. A at ¶¶ 25, 28-30, 32, 34-36). The complaint then goes on to allege that several New Jersey State Court judges participated in the scheme to persecute plaintiff by having him repeatedly appear in court without good reasons, causing plaintiff to wait in court for prolonged periods of time and ignoring plaintiff's motions (Picillo Cert. Ex. A at ¶ 42). Plaintiff also alleges that defendants have caused him to be improperly labeled as a sex offender and that he has been subjected to hyper-strict conditions of supervision (Picillo Cert. Ex. A at ¶¶ 62-64, 67).

After the commencement of the Eastern District Action, on December 12, 2002, the New York City Probation Officer supervising plaintiff, David M. Bethel, transmitted a request to defendant Santiago, a Probation Officer of the State of New Jersey, "requesting that the Hudson County Probation Department file a violation on the probationer, Wayne Rose, for not compling [sic] with his special condition (Mental Health Counseling)" (Barzey Decl. Ex. G). As a result of Bethel's request, Walsh, as "Vicinage Chief Probation Officer" issued a summons to plaintiff on January 9, 2003 directing him to appear in the Superior Court of New Jersey on February 7, 2003 for a hearing on the alleged violation (Barzey Decl. Ex. H). This summons was co-signed by

---

[4]The Eastern District complaint does not provide dates for any of the forgoing alleged events.

Santiago as plaintiff's probation officer.  The summons also advised plaintiff where he could apply for representation by the public defender and further advised plaintiff that if he failed to appear on the date and at the time indicated, a warrant would issue for his arrest.

Although there is a gap in the record at this point, it appears that plaintiff was ultimately found not guilty of the alleged probation violation on June 5, 2003 and was continued on probation with the instruction "to continue counseling as recommended by probation" (Exhibit E to the Second Certification of Deputy Attorney General Joseph I. Picillo, dated January 26, 2006 (Docketed as part of Docket Item 33) ("2d Picillo Cert.")).

On or about February 25, 2003 -- after the filing of the Eastern District Action but before the disposition of plaintiff's probation violation proceeding -- plaintiff commenced this action.  The complaint in this action repeats a substantial number of the allegations in the Eastern District Action and alleges, among other things, that Santiago and Walsh and the other defendants retaliated against plaintiff for filing the Eastern District Action against them (Complaint ¶ 40).  The material allegations concerning Santiago and Walsh are set forth in the following six paragraphs:

> 33.  That defendants BETHEL, WAY and THE CITY have duly filed a false, vindictive, slanderous documentation to defendants SANTIAGO and WALSH indicating that plaintiff requires medical attention and/or psychologi-

cal treatment and as refuses [sic] to seek the same under the terms of his state probation.

34. That defendants SANTIAGO and WALSH have duly filed a false, vindictive, slanderous report to the Superior Court of New Jersey seeking to violate plaintiff's civil liberties in order to protect themselves from plaintiff prosecuting the aforesaid Federal Action [i.e., the Eastern District Action].

. . . .

37. That defendants SANTIAGO and WALSH had absolute knowledge that plaintiff was making all good effects [sic] to comply with said request and defendants have obstructed, through their positions and offices all amicable attempts plaintiff has made.

38. That defendants SANTIAGO and WALSH have used their positions as employees of the state to manipulate the court and not follow proper procedures to amend plaintiff's terms of probation as defined by the state rules and codes in order to retaliate against plaintiff.

39. That by reason of the submission of the aforesaid violation report defendants SANTIAGO and WALSH are attempting to violate plaintiff's civil liberties.

40. That the defendants [sic] acts and conduct are in retaliation and to harass, frustrate and torture plaintiff for the filing of an action to protect and secure his civil rights and seek damages therefrom.

B.  Judge Garaufis's Decisions

    The Eastern District Action was assigned to the Honorable Nicholas G. Garaufis, United States District Judge.  All defendants moved to dismiss the complaint, and with the exception of the motion made by the defendants who were state court judges, Judge Garaufis denied the motion in substantial part in an

unpublished Memorandum and Order dated March 10, 2004 (Picillo Cert. Ex. D).  Relying on Ray v. Pickett, 734 F.2d 370 (8th Cir. 1984), Galvan v. Garmon, 710 F.2d 214 (5th Cir. 1983) and Gelatt v. County of Broome, 811 F. Supp. 61 (N.D.N.Y. 1993), Judge Garaufis concluded that the probation-officer defendants were not entitled to absolute immunity with respect to plaintiff's claims based on allegedly false probation violation reports because their role in such proceedings was more analogous to that of a police officer seeking an arrest warrant than to a prosecutor or judicial officer (Picillo Cert. Ex. D at 12-13).  Judge Garaufis, however, invited the probation-officer defendants to move for reconsideration if they could develop additional factual or legal support for their claim of absolute immunity (Picillo Cert. Ex. D at 14).

Santiago and Walsh accepted Judge Garaufis's invitation to seek reconsideration, and on reconsideration Judge Garaufis granted their motion to dismiss the complaint.  Although Judge Garaufis denied Santiago and Walsh's motion to dismiss on the basis of absolute judicial immunity, adhering to his decision that, at least in the abstract, the probation officer's role was similar to that of police officer who is entitled to qualified immunity only (Picillo Cert. Ex. H at 3-4), he granted Santiago and Walsh's motion to the extent it asserted absolute prosecutorial immunity as a defense.

Addressing the specific facts of the probation viola-

tion proceeding commenced against plaintiff in December 2002

based on his failure to attend mental health counseling, Judge

Garaufis found that Santiago and Walsh were entitled to absolute

prosecutorial immunity because their role was limited to seeking

to commence a violation proceeding based on information supplied

by the probation officers actually supervising plaintiff in New

York.  Because the question of what Judge Garaufis actually

decided in this regard is critical to Santiago and Walsh's

principal argument in this case, I quote the pertinent portion of

Judge Garaufis's decision at length:

> B.  Probation Violation for Failing to Attend
> Counseling
>
> 1.  *Scotto v. Almenas*
>
> The New Jersey probation officers argue that under
> Scotto v. Almenas, 143 F.3d 105 (2d Cir. 1998), they
> should be entitled to absolute prosecutorial immunity
> for their decision to initiate a probation violation
> proceeding based on information they received from New
> York probation officers. . . .  In Scotto, the Second
> Circuit held that a parole officer who investigated a
> parole violation and recommended that a warrant be
> issued was not entitled to absolute judicial or prose-
> cutorial immunity because his role was akin to that of
> a police officer who is only protected by qualified
> immunity.  Scotto, 143 F.3d at 111-13.  The Scotto
> court, however, held that a parole officer who was
> supervising the investigating officer and who ulti-
> mately decided to sign the arrest warrant was entitled
> to absolute prosecutorial immunity because "the discre-
> tionary decision to sign the arrest warrant based upon
> [another officer's] recommendation initiated the parole
> revocation proceedings and was prosecutorial in na-
> ture."  Id. at 113.

In this case, much like in Scotto, the New Jersey
probation officers did not investigate whether or to
what extent the plaintiff was obtaining mental health
counseling, but initiated a probation violation pro-
ceeding at the recommendation of New York probation
officers. See Defendants' Sworn Certification of
Counsel ("Def. Aff.") Ex. G. A New York City probation
officer sent New Jersey probation officer Evelyn Santi-
ago a letter "requesting that the Hudson County[, New
Jersey] Probation Department file a violation for the
probationer, Wayne Rose, for not compling [sic.] with
his special condition (Mental Health Counseling)."
This letter makes clear that it is the New York proba-
tion officers that investigated the violation and the
New Jersey probation officers that merely prosecuted
the probation violation. As a result, with respect to
initiating the violation proceeding, the New Jersey
probation officers' conduct in making the discretionary
decision to prosecute the probation violation falls
within the probation officers' absolute prosecutorial
immunity. Cf. Scotto, 143 F.3d at 113.

(Picillo Cert. Ex. H at 4-6).

Neither plaintiff nor Santiago nor Walsh have explained
why Judge Garaufis addressed an absolute immunity defense with
respect to conduct that post-dated and could not have been the
basis for the complaint in the Eastern District Action. In
addition, plaintiff no where asserts that Santiago or Walsh
participated in any misconduct other than their participation in
the violation proceeding commenced in December 2002.[5]

---

[5]Indeed, plaintiff affirmatively admits that Santiago's only
involvement with his case was her involvement in the December
2002-June 2003 probation violation proceedings (Affidavit of
Wayne Rose, sworn to January 4, 2006 at ¶ 16 (Docketed as part of
Item 29)).

## C.    Santiago and
       Walsh's Arguments

Santiago and Walsh contend that they are entitled to summary judgment on nine different bases:  (1) plaintiff's claims against them are barred by the doctrines of res judicata and collateral estoppel; (2) they are entitled to absolute immunity because they function as part of the New Jersey Judiciary; (3) they are entitled to absolute prosecutorial immunity; (4) the claims against them are barred by the Eleventh Amendment; (5) they are not subject to liability pursuant to 42 U.S.C. §§ 1983, 1985-88, 14141 because they are not "persons" within the meaning of these statutes; (6) they are not liable under 42 U.S.C. § 1983 because they were not deliberately indifferent to any of plaintiff's constitutionally protected rights; (7) plaintiff's claim under 42 U.S.C. § 1983 is barred by the doctrine of qualified immunity; (8) plaintiff's Section 1983 claim for malicious prosecution should be dismissed because the requisite proofs do not exist, and (9) plaintiff's civil conspiracy claims should be dismissed because there is no substantive violation and no allegation of class-based conspiracy.

III.  Analysis

A.  Summary Judgment Standards

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which [he] has the burden of proof -- exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993).  If the non-movant fails to meet this burden, summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22

F.3d 1219, 1223-24 (2d Cir. 1994); see also McPherson v. New York City Dep't of Educ., ___ F.3d ___, 2006 WL 1967033 at *4 n.4 (2d Cir. July 13, 2006) ("speculation alone is insufficient to defeat a motion for summary judgment").  In the summary judgment context, "[w]here the non-moving party is proceeding pro se, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'"  Forsyth v. Fed'n Employment & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005), quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Haines v. Kerner, supra, 404 U.S. at 520; Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

The Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

B.   Santiago and Walsh's
     Summary Judgment Motion

     1.   Res Judicata and
          Collateral Estoppel

The common law doctrines of res judicata and collateral estoppel are "related but distinct [and] operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).

"Res judicata [or claim preclusion[6]] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding."  Perez v. Danbury Hosp., 347 F.3d 419, 426 (2d Cir. 2003), quoting Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000); accord Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).  "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subse-

_____

[6]Some more modern authorities refer to the doctrines of res judicata and collateral estoppel by the more descriptive terms of claim preclusion and issue preclusion, respectively.  See Allen v. McCurry, 449 U.S. 90, 94 n.5 (1980).

quent action were, or could have been, raised in the prior action.'" Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001), quoting Monahan v. N.Y. City Dep't of Corr., supra, 214 F.3d at 284-85; see also Allen v. McCurry, supra, 449 U.S. at 94; Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345-46 (2d Cir. 1995); Henik v. Labranche, 433 F. Supp.2d 372, 378 (S.D.N.Y. 2006); Word v. Croce, 230 F. Supp.2d 504, 508-09 (S.D.N.Y. 2002).

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288; see Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998); see also Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel."). To assert a defense of collateral estoppel success- fully, a party must establish four elements: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006), quoting Purdy v. Zeldes,

337 F.3d 253, 258 & n.5 (2d Cir. 2003); accord Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005); Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288-89. In addition, collateral estoppel will not be applied where it would result in an unfair result. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-31 (1979) (application of collateral estoppel may be unfair where prior litigations have yielded inconsistent results); Bear Stearns & Co. v. 1109850 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (same).

Santiago and Walsh's entitlement to absolute immunity in connection with their involvement in the probation violation proceedings that were commenced in December 2002 was squarely addressed by Judge Garaufis, and he clearly concluded that both were entitled to absolute immunity because their involvement in the proceeding was analogous to the role that prosecutor plays in deciding to commence a criminal prosecution (see pages 9-10, above). Since this issue was in fact litigated in the Eastern District Action, both the doctrines of res judicata and collateral estoppel claim prevent plaintiff from relitigating the issue here.

Plaintiff argues that the complaint in this action covers conduct subsequent to the commencement of the Eastern District Action and that the result in the Eastern District

Action cannot therefore be controlling here[7] (see Plaintiff's Memorandum of Law, dated January 4, 2006, at 28-29). Although plaintiff's theory is correct, he is not applying it to the facts in this case properly.

Where a defendant engages in a course of conduct that involves multiple acts, a decision in an earlier action will not have any res judicata or collateral estoppel effect with respect to claims arising out of acts that are part of the course of conduct but that post-date the earlier decision and were not actually litigated in the earlier decision. See Perez v. Danbury

---

[7]For example, plaintiff argues:

> As stated, if one was to hit someone with a car that would be a cause of action for a lawsuit. If a week later he hits you again with the car that is another lawsuit. It is not *res judicata*. The defendants are desperate and want to raise this issue again. In fact, it is res judicata only to the extent that it was brought to this court, argued and decided upon already in favor of the plaintiff. Plaintiff sees not much of a reason to plead a dozen cases as the defendants do. It is clearly not the same issue. Plaintiff filed a lawsuit against the defendants . . . the defendants retaliate . . . the plaintiff files a separate lawsuit for their retaliation. Plain and simple.

> The defendants try to confuse the matter and try to convince this that these allegations are set forth in the Eastern District Complaint. While the charges are similar . . . it is a separate incident, to wit, again the retaliatory conduct in filing a [violation of probation] in retaliation against the plaintiff for filing a lawsuit against them.

(Plaintiff's Memorandum of Law, dated January 4, 2006, at 29).

Hosp., supra, 347 F.3d at 426; Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 287. However, plaintiff simply ignores the fact that, without objection from the parties,[8] Judge Garaufis expressly considered the probation violation proceedings commenced in December 2002, examined the roles played by Santiago and Walsh in that proceeding and actually determined that they were entitled to absolute immunity, notwithstanding the fact that his decision addressed conduct that occurred after the commencement of the Eastern District Action. If this action involved allegations of misconduct by Santiago and Walsh other than the probation violation proceedings commenced in December 2002, plaintiff's argument would probably be persuasive. However, since plaintiff is relying here on the very same acts of alleged misconduct that Judge Garaufis considered, the fact that the alleged misconduct took place after the complaint was filed in the Eastern District Action is of no importance.

In addition, Judge Garaufis's consideration of matters beyond the pleadings was clearly appropriate. See Bradford Audio Corp. v. Pious, 392 F.2d 67, 73-74 (2d Cir. 1968) ("[T]he District Court was bound to consider the issues raised by the evidence even though the appellee made no formal motion to amend his

_____

[8]There is nothing in the record that indicating that plaintiff objected to Judge Garaufis's addressing issues beyond the scope of the complaint in the Eastern District Action, and plaintiff does not claim here that he made such objection.

pleadings."); <u>Underwriters Salvage Co. v. Davis & Shaw Furniture Co.</u>, 198 F.2d 450, 453 (10th Cir. 1952) ("[I]t is the duty of the court to consider issues raised by evidence received without objection even though no formal application is made to amend."). Indeed, this precise situation is expressly addressed in Rule 15(b) of the Federal Rules of Civil Procedure:

> (b) **Amendments to Conform to the Evidence**. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; <u>but failure so to amend does not affect the result of the trial of these issues</u>. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

(Emphasis added). If a courts operated in a world where every procedural detail was rigidly observed, the complaint in the Eastern District Action would have been amended after Judge Garaufis's decision on reconsideration. However, as Rule 15(b) expressly provides, the failure to do so does not alter the consequences that flow from his decision. <u>See</u> <u>Michelsen v. Brush</u>, 224 F. Supp. 951, 953 (E.D.N.Y. 1963) ("The pleadings may be amended to conform to the evidence and when so amended, will relate back to the date of the original pleading, but failure to

amend will not affect the result of the trial of the issues (Rule 15(b) and (c)).").

Finally, although neither party has addressed the issue, in light of plaintiff's _pro se_ status, I have considered _sua sponte_, whether Judge Garaufis's decision, which is a decision on a Rule 12 dismissal motion, is sufficient to satisfy the requirement of a final judgment on the merits, and I conclude that it is. Finality for the purposes of res judicata or collateral estoppel is not co-extensive with finality for the purpose of appellate jurisdiction.

> Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (_i.e._, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1962) (Friendly, J.); _see_ generally 18A Charles A. Wright, Arthur M. Miller & Edward M. Cooper, Federal Practice & Procedure § 4434 (2d ed. 2002). As a practical matter, Judge Garaufis's decision was the final decision in the Eastern District Action with respect to Santiago and Walsh. Although it was not immediately appealable because it did not resolve all issues as to all parties, _see_ Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978),

20

it did terminate the involvement of Santiago and Walsh in the case. Prior to the disposition of all remaining claims as to all remaining parties, there does not appear to be any mechanism by which the decision can be revisited. Second, the decision was the result of two rounds of argument and a careful, reasoned analysis by Judge Garaufis. Third, the record before me appears to be substantially the same record Judge Garaufis had before him. It would be wasteful and unseemly for two judges to be reviewing precisely the same evidence in two different cases and potentially reaching differing results. Accordingly, I find that Judge Garaufis's decision has sufficient weight to be considered final. See generally O'Diah v. New York City, 02 Civ. 274 (DLC), 2002 WL 1941179 at *4-*5 (S.D.N.Y. Aug. 21, 2002) (affording preclusive effect to decision on Rule 12 motion).

Since the parties actually litigated whether Santiago and Walsh were entitled to immunity for their roles in the probation violation proceeding that was commenced in December 2002 and since Judge Garaufis ruled on the matter, plaintiff and defendants are bound by that decision, and this action should be dismissed as to Santiago and Walsh on the ground of absolute prosecutorial immunity.[9]

---

[9]Absolute prosecutorial immunity protects Santiago and Walsh from both constitutional and common law claims that arise from the December 2002 probation-violation proceeding. Buckley v. Fitzsimmons, 509 U.S. 259 (1993) (prosecutorial immunity bars
(continued...)

Although the foregoing is sufficient to address the issues raised in the present motion, in order to minimize the possibility of the matter being remanded, I shall go on to address the other grounds asserted by Santiago and Walsh.

## 2. Judicial Immunity

Santiago and Walsh next claim that they are entitled to absolute judicial immunity because the claims against them arise out of actions they allegedly performed as probation officers and the New Jersey Probation Division is an arm of the New Jersey Judiciary.

Santiago and Walsh made this argument to Judge Garaufis and he rejected it (Picillo Cert. Ex. H at 3-4). Because I concluded above that Judge Garaufis's decision is binding on the parties here, I recommend that Santiago and Walsh's motion for summary judgment be denied to the extent that its based on the doctrine of absolute judicial immunity. Even if Judge Garaufis's

---

[9](...continued)
constitutional and common law claims for acts taken by prosecutor, regardless of motive); Imbler v. Pachtman, 424 U.S. 409, 410 (1976); Hickey v. City of New York, 01 Civ. 6506 (GEL), 2002 WL 1974058 at *4 (S.D.N.Y. Aug. 26, 2002); Saar v. United States Dep't of Justice, 705 F. Supp. 999, 1004 (S.D.N.Y. 1989) ("The defense of absolute prosecutorial immunity is available for those prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' . . . Unless the prosecutor is acting in a purely investigatory or administrative capacity, he may not be held civilly liable for the commission of a constitutional tort.").

decision were not binding, I would recommend that this aspect of
Santiago and Walsh's motion be denied for the reasons stated by
Judge Garaufis.

### 3. Prosecutorial Immunity

Santiago and Walsh next claim that the action should be
dismissed as to them because they are entitled to absolute prose-
cutorial immunity.

Even if it were not binding, I conclude that Judge
Garaufis's reasoning concerning this issue is persuasive and
recommend that Judge Garaufis's decision be followed to the
extent that it concluded that Santiago and Walsh are entitled to
absolute prosecutorial immunity.

### 4. The Eleventh Amendment

Santiago and Walsh next argue that the Eleventh Amend-
ment to the United States Constitution deprives this Court of
subject matter jurisdiction to consider plaintiff's claims
against them.

The Eleventh Amendment provides:  "The Judicial power
of the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State."  "The Eleventh Amendment, where

applicable, deprives a federal court of jurisdiction.  Thus, prior to addressing the merits of [a] case [the Court] must first determine whether Eleventh Amendment immunity bars [its] juris- diction."  In re 995 Fifth Ave. Assocs., 963 F.2d 503, 506 (2d Cir. 1992) (citation omitted).

There are two exceptions to Eleventh Amendment immu- nity:  a state may be sued in federal court if Congress has enacted legislation abrogating the state's immunity, or if the state has consented to be sued in federal court.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984). Title 18, United States Code, Section 1983 does not abrogate a states' immunity under the Eleventh Amendment.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66-67 (1989); Quern v. Jor- dan, 440 U.S. 332, 340-45 (1979); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990).  Additionally, New Jersey has not consented to suit in federal court under section 1983.  See Brown v. Sherrer, 05-CV-04749 (DMC), 2006 WL 2023189 at *5 (D.N.J. July 11, 2006); Onyiuke v. N.J. State Supreme Court, 05-5404 (JAP), 2006 WL 1737466 at *4 (D.N.J. June 27, 2006). Thus, the State of New Jersey would be protected from liability by the Eleventh Amendment.

The immunity enjoyed by the State of New Jersey under the Eleventh Amendment extends to state officials, and bars "'a suit seeking money damages from a State official in his official

24

capacity.'"  Quartararo v. Catterson, 917 F. Supp. 919, 931
(E.D.N.Y. 1996), quoting Allah v. Comm'r of Dep't of Corr.
Servs., 448 F. Supp. 1123, 1125 (N.D.N.Y. 1978); see also
McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Will v.
Mich. Dep't of State Police, supra, 491 U.S. at 71; Kentucky v.
Graham, 473 U.S. 159, 165-67, 170 n.19 (1985); Edelman v. Jordan,
supra, 415 U.S. 651, 663 (1974); Ying Jing Gan v. City of New
York, 996 F.2d 522, 529 (2d Cir. 1993).  Thus, to the extent that
the plaintiff asserts claims under section 1983 against Santiago
and Walsh in their official capacities, they enjoy Eleventh
Amendment immunity.

         "However, the eleventh amendment does not extend to a
suit against a state official in his [or her] individual capac-
ity, even when the conduct complained of was carried out in
accordance with state law."  Berman Enters. v. Jorling, 3 F.3d
602, 606 (2d Cir. 1993); accord Hafer v. Melo, 502 U.S. 21, 27-31
(1991) (Eleventh Amendment does not bar damages actions against
state officials sued in their personal or individual capacities);
Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003) (same).  Thus,
to the extent that the complaint on this case can be read as
asserting claims against Santiago and Walsh in their individual
capacities, the Eleventh Amendment provides them no comfort.

         The complaint here does not specify whether Santiago
and Walsh are being sued in their official or personal

                                25

capacities, and since I must construe a <u>pro</u> <u>se</u> civil rights
complaint liberally, <u>see</u> <u>Green v. United States</u>, 260 F.3d 78, 83
(2d Cir. 2001) ("It is well settled that <u>pro</u> <u>se</u> litigants gener-
ally are entitled to a liberal construction of their pleadings,
which should be read 'to raise the strongest arguments that they
suggest.'"), I shall assume that plaintiff is asserting claims
against them in both capacities.  Accordingly, the complaint
should also be dismissed to the extent that it asserts claims
against Santiago and Walsh in their official capacities.  To the
extent the complaint asserts claims against Santiago and Walsh in
their personal capacities their motion for summary judgment
should be denied.

     5.   Santiago and Walsh's Status
         as "Persons" Within the
         Meaning of 42 U.S.C. §§ 1983,
         <u>1985, 1986, 1987, 1988 and 14141</u>

Santiago and Walsh's argument that they are not "per-
sons" within the meaning of 42 U.S.C. §§ 1983, 1985, 1986, 1987,
1988 and 14141 is really just a variant of their Eleventh Amend-
ment argument.

Santiago and Walsh's argument is based, in principal
part, on <u>Will v. Michigan Department of State Police</u>, <u>supra</u>, 491
U.S. at 71, which held that "neither a State nor its officials
acting in their official capacities are 'persons' under [42
U.S.C.] § 1983."  The decision in <u>Will</u> was based in principal

part on the Supreme Court's determination that Section 1983 had
to be construed in light of the Eleventh Amendment and that
Section 1983 was not intended to abrogate Eleventh Amendment
immunity with respect to violations of federally protected right
by a state or its officials.  As the Court noted in Will, "That
Congress, in passing § 1983, had no intention to disturb the
States' Eleventh Amendment immunity and so to alter the federal-
state balance in that respect was made clear in our decision in
Quern [v. Jordan, 440 U.S. 332 (1979)]."  491 U.S. at 66.

        Will did not, however, alter a state official's liabil-
ity in her individual capacity for violations of federally pro-
tected rights.  As the Supreme Court held two years after Will in
Hafer v. Melo, supra, 502 U.S. at 22-23:

> In Will v. Michigan Dept. of State Police, 491
> U.S. 58 (1989), we held that state officials "acting in
> their official capacities" are outside the class of
> "persons" subject to liability under Rev.Stat. § 1979,
> 42 U.S.C. § 1983.  491 U.S., at 71.  Petitioner takes
> this language to mean that § 1983 does not authorize
> suits against state officers for damages arising from
> official acts.  We reject this reading of Will and hold
> that state officials sued in their individual capaci-
> ties are "persons" for purposes of § 1983.

Accord Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005)
(quoting Will, and noting that "[s]uit can also be brought
against [state officials] under section 1983 in their individual
capacities for both prospective and retrospective relief."); Posr
v. Court Officer Shield # 207, 180 F.3d 409, 414 (2d Cir. 1999).

Accordingly, Santiago and Walsh are not "persons" within the meaning of 42 U.S.C. §§ 1983, 1985, 1986, 1987, 1988 and 14141 only to the extent that they are sued in their official capacities. They are persons within the meaning of these statutes to the extent that they are sued in their individual capacity. Thus, summary judgment should be granted to the extent Santiago and Walsh seek dismissal of the claims asserted against them in their official capacities and denied to the extent that it seeks dismissal of the claims against them in their individual capacities.

> 6.  Santiago and Walsh's
>     Alleged Deliberate
>     Indifference to Plaintiff's
>     <u>Constitutional Rights</u>

In their sixth argument, Santiago and Walsh claim that they are entitled to summary judgment because

> plaintiff fails to demonstrate any activity that could have resulted from deliberate indifference on the part of the defendants that directly caused a violation of plaintiff's alleged rights. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement must be shown through specific evidence of personal direction or actual knowledge and acquiescence in the violation of plaintiff's constitutional rights. <u>Id</u>. at 1207 . . . . No such evidence exists here. Plaintiff's mere allegations of malicious prosecution and conspiracy do not constitute factual evidence sufficient to support plaintiff's claims or to defeat the instant motion.

(Brief of Defendants Colleen Walsh and Evelyn Santiago, dated December 5, 2005, at 34 (Docket Item 24)).

28

Santiago and Walsh's argument here is an odd mixture of concepts; it's not clear whether they are making a true 12(b)(6) argument and attacking the face of the complaint or arguing that plaintiff cannot muster sufficient evidence to sustain a verdict in his favor.

If Santiago and Walsh's argument is addressed to the face of the complaint, it is unconvincing. In <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993), the Supreme Court explained that Rule 8's notice pleading requirements govern section 1983 claims and that there is no heightened pleading with respect to such claims. Read leniently, the complaint in this case alleges that Santiago and Walsh participated in the commencement of probation-violation proceedings against plaintiff despite having "absolute knowledge that plaintiff was making all good efforts to comply [with the conditions of his probation] and defendants . . . obstructed through their positions and offices all amicable attempts plaintiff has made" (Complaint ¶ 37). These allegations of a baselessly commenced violation of probation proceeding are sufficient to state a claim for a constitutional violation.

If Santiago and Walsh are alleging that plaintiff has not adequately pled their personal involvement, their argument is also unconvincing. Although there can be no dispute that a defendant's personal involvement in the constitutional violation

is an essential element of liability under Section 1983, <u>Leonhard v. United States</u>, 633 F.2d 599, 621 n.30 (2d Cir. 1980); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977); <u>Johnson v. Bendheim</u>, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001), there is a more than adequate allegation of personal involvement here.  Personal involvement can be shown in any one of five ways:  "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  <u>Hernandez v. Keane</u>, 341 F.3d 137, 145 (2d Cir. 2003).  The complaint alleges that Santiago and Walsh themselves "duly filed a false, vindictive, slanderous report to the Superior Court of New Jersey seeking to violate plaintiff's civil liberties in order to protect themselves from plaintiff['s] prosecuting the [Eastern District Action]" (Complaint ¶ 34).  The foregoing is clearly sufficient to allege personal involvement.

If Santiago and Walsh are arguing that plaintiff cannot muster sufficient evidence to sustain his burden of proof, their argument is both unsupported and premature.  Summary judgment

"may be appropriate after discovery if the non-moving party cannot prove an 'essential element of her case,' that is, one for which [he] bears the burden of proof." Forsyth v. Fed'n Employment & Guidance Serv., supra, 409 F.3d at 569, citing Powell v. Nat'l Bd. of Med. Exam'rs, supra, 364 F.3d at 84. If this is the theory on which Santiago and Walsh are relying, their motion is defective because (1) discovery is not closed in this case and (2) Santiago and Walsh have not submitted an affidavit or other evidentiary material denying the allegations of the complaint. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., supra, 373 F.3d at 244 (summary judgment motion cannot be granted unless movant meets its initial burden of showing the absence of a genuine issue of fact and that it is entitled to judgment as a matter of law).

       To the extent that Santiago and Walsh suggest that the complaint does not allege sufficient evidence to support plaintiff's claims, they misconceive the role of the complaint in modern federal practice. The principal purpose of the complaint is to give the defendant notice of plaintiff's claim. A complaint need not prove the claim; a plaintiff need not allege evidence in the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-12 (2002); 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1218 at 272 (3rd ed. 2004) ("[M]any federal courts have taken a dim view of the pleading of

evidence and have ordered repleading or have sustained motions to strike those portions of a pleading that contain evidentiary allegations."). Thus, the fact that the complaint does not set forth evidence sufficient to support the claim is of no moment.

Finally, to the extent that Santiago and Walsh are arguing that the facts do not support plaintiff's claim, their argument is misplaced. Disputed issues of fact cannot be resolved on a summary judgment motion. <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 254 (2d Cir. 2002) ("In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party.").

Thus, to the extent that Santiago and Walsh claim that they are entitled to summary judgment because they were not deliberately indifferent to plaintiff's rights, their motion should be denied.

7. <u>Qualified Immunity</u>

In their seventh argument, Santiago and Walsh claim that they are entitled to summary judgment on the ground of qualified immunity.

Judge Garaufis addressed this argument and concluded that Santiago and Walsh were not entitled to dismissal of the

complaint on the basis of qualified immunity (Picillo Cert. Ex. D at 15-18). Even if I were not bound by Judge Garaufis's decision by the principals of res judicata and collateral estoppel, I would reach the same conclusion Judge Garaufis reached for the same reasons.

8.   Legal Sufficiency of
     Plaintiff's Section 1983
     <u>Malicious Prosecution Claim</u>

In their eighth argument, Santiago and Walsh contend that plaintiff's claim is legally deficient; this argument is meritorious.

Plaintiff's claim here is that baseless probation-violation proceedings were commenced against him with the active and knowing participation of Walsh and Santiago. Thus, plaintiff's claim is essentially a Section 1983 malicious prosecution action. However, because the federal right to be vindicated by such a claim is the Fourth Amendment right to be free from arbitrary seizures, an essential element of such a claim is a post-arraignment deprivation of personal liberty. <u>Albright v. Oliver</u>, 510 U.S. 266, 274-75 (1994); <u>Murphy v. Lynn</u>, 118 F.3d 938, 944 (2d Cir. 1997); <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116-17 (2d Cir. 1995). The deprivation of liberty necessary to sustain a Section 1983 malicious prosecution action is not, however, limited to physical incarceration. <u>Murphy v. Lynn</u>,

supra, 118 F.3d at 945.  Conditions of pretrial release that limit travel or require repeated court appearances can also constitute seizures within the meaning of the Fourth Amendment and are sufficient deprivations of freedom to sustain a Section 1983 malicious prosecution claim.  Murphy v. Lynn, supra, 118 F.3d at 946; Porat v. Lincoln Towers Cmty. Ass'n, 04 Civ. 3199 (LAP), 2005 WL 646093 at *3 (S.D.N.Y. Mar. 21, 2005); see also Dorman v. Castro, 347 F.3d 409, 411 (2d Cir. 2003).

At the time the December 2002 probation violation proceeding was commenced plaintiff was on probation, and, presumably, there were already some restrictions on his freedom of movement that resulted from his probationary status.  Thus, the issues raised by this aspect of Santiago and Walsh's motion is whether there were additional conditions of release resulting from the probation violation proceeding that could constitute a seizure within the meaning of the Fourth Amendment.  None of the parties' papers address this issue.  Accordingly, I find that there is an unresolved issue of fact that prevent summary judgment from being granted on this aspect of Santiago and Walsh's motion.

9.  Viability of Plaintiff's
    Section 1985 Conspiracy
    Claim and Related
    Section 1986 Claim

Finally, Santiago and Walsh allege that plaintiff's Section 1985(3) and related 1986 claim fail because there is no substantive violation of Section 1983 and because there is no claim or evidence of class-based discrimination.

Santiago and Walsh cite no authority for their initial argument, and as a general matter, it is inconsistent with federal criminal law concerning conspiracy. It is well settled that a criminal conspiracy is separate from its illegal object and that conspiracy's failure to achieve its object is no defense to the conspiracy charge. United States v. Wallach, 935 F.2d 445, 470 (2d Cir. 1991); United States v. Rose, 590 F.2d 232, 235-36 (7th Cir. 1978).

In any event, however, I need not resolve whether am unsuccessful conspiracy is actionable under Section 1985(3). Plaintiff's conspiracy claim is deficient because plaintiff does not allege class-based discrimination. A conspiracy under Section 1985(3) requires an allegation and evidence of class-based discrimination. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993); United Bhd. of Carpenters & Joiners of Amer. v. Scott, 463 U.S. 825, 834-35 (1983); Brown v. Sara Lee Corp., 98 Civ. 1593 (JSR), 1998 WL 809518 at *3 (S.D.N.Y. Nov.

19, 1998).  A conspiracy whose goal is retaliation for conduct is not actionable under Section 1983.  <u>Town of W. Hartford v. Operation Rescue</u>, 991 F.2d 1039, 1045-46 (2d Cir. 1993).

Although plaintiff attempts to salvage his Section 1985(3) by suggesting he constitutes a "class of one," this tact is unavailing.  Assuming without deciding that a "class of one" is protected by Section 1985, the claim requires an allegation that plaintiff was treated differently than others for no rational reason.  As explained by the Honorable Jerome Niedermeier, United States Magistrate Judge, in <u>Massey v. Deslauriers</u>, Docket No. 2:03-CV-253, 2005 WL 2043006 at *10 (D. Vt. Aug. 23, 2005):

> A claim under Section 1985 requires a showing of class-based animus.  <u>Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.</u>, 968 F.2d 286, 291 (2d Cir. 1992).  It is not clear that Section 1985 applies to cases involving an alleged class of one.  <u>See</u>, <u>e.g.</u>, <u>C & H Co. v. Richardson</u>, 78 Fed. Appx. 894, 901-902 (4th Cir. 2003) (noting that Section 1985 does not appear to apply to class of one cases); <u>Burns v. State Police Assoc. of Mass.</u>, 230 F.3d 8, 12, n. 4 (1st Cir. 2000) (same).  Even assuming that Section 1985 does apply to a class of one, however, the Masseys present no evidence that similarly situated people were treated in a different manner.

<u>See</u> <u>also</u> <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 754 (2d Cir. 2003); <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2d Cir. 2003) ("[A] successful equal protection claim may be 'brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"); <u>Brown</u>

v. Thomas, 02 Civ. 9257 (GEL), 2003 WL 941940 at *2 (S.D.N.Y. Mar. 10, 2003) (In order to sustain a "class-of-one" equal pro-tection claim, a plaintiff "must show that he was similarly situated to others and received different treatment from them, and was subjected to 'irrational and wholly arbitrary acts' and 'intentional disparate treatment.'").

Although plaintiff here clearly alleges that he was treated improperly and unfairly, he does not allege that others were treated more favorably than him.  Thus, even under a "class of one" theory, his Section 1985 claim fails.

Plaintiff's failure to assert a viable claim under Section 1985 necessarily implies that he has no claim under Section 1986.  Levy v. City of New York, 726 F. Supp. 1446, 1455 (S.D.N.Y. 1989).

10.  Summary

Accordingly, for all the foregoing reasons, Santiago and Walsh's motion for summary judgment dismissing the complaint in its entirely as to them should be granted on the basis of res judicata and collateral estoppel because their entitlement to absolute prosecutorial immunity has already been fully litigated and decided adversely to plaintiff.  In the event the foregoing recommendation is rejected, I further recommend that the com-plaint be dismissed as to Santiago and Walsh on the following

bases: (1) absolute prosecutorial immunity; (2) Eleventh Amend-
ment immunity, but only to the extent that plaintiff asserts
claims against them in their official capacities; (3) on the
theory that they are not "persons" within the meaning of the
pertinent civil rights statutes, but only to the extent that
plaintiff asserts claims against them in their official capaci-
ties, and (4) plaintiff has failed to allege a viable civil
conspiracy. Santiago and Walsh's remaining arguments are unper-
suasive.

C.  Plaintiff's Summary
     Judgment Motion

        My conclusion that plaintiff's existing claims against
Santiago and Walsh, by itself, requires the denial of plaintiff's
motion for summary judgment. Even if summary judgment for Santi-
ago and Walsh were denied, however, plaintiff's motion for sum-
mary judgment would still have to be denied.

        Although plaintiff's papers recount his version of the
facts at length, they do nothing more. Plaintiff nowhere demon-
strates that the evidence is so one-sided that there is no genu-
ine issue of fact for trial, nor dose he demonstrate his entitle-
ment to judgment as a matter of law on some other basis. Thus,
even if Santiago and Walsh's motion for summary judgment were
denied, plaintiff's motion should also be denied.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that summary judgment be granted dismissing the
complaint in its entirety as to Santiago and Walsh and that
plaintiff's motion for summary judgment be denied in its en-
tirety.  If accepted, this report and recommendation will resolve
close the motions docketed as items 22 and 29.

        My conclusion is, however, subject to the following
limitation.  Judge Garaufis considered Santiago and Walsh's claim
of absolute prosecutorial immunity only with respect to the
December 2002 probation-violation proceedings.  I have studied
plaintiff's papers carefully, and the only misconduct specifi-
cally alleged by Santiago and Walsh relates to their involvement
in the December 2002 probation-violation proceeding, although
plaintiff's papers repeatedly refers to "defendants," with no
identification of specific defendants.  If plaintiff is alleging
some misconduct by Santiago and Walsh other than their participa-
tion in the December 2002 probation-violation proceeding, I
cannot determine what it is.  My analysis of all the parties'
arguments has, therefore, been based on my understanding that the
commencement and prosecution of the December 2002 probation-
violation proceeding is plaintiff's only grievance against Santi-
ago and Walsh.  If plaintiff is alleging some other misconduct by

Santiago and Walsh, I do not intend this Report and Recommendation to address such allegations.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        August 11, 2006

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Wayne Rose
227 Beach 86th Street
Rockaway Beach, New York   11693

Jed M. Weiss, Esq.
Cozen O'Connor, LLP
45 Broadway, 16th Floor
New York, New York   10006

Mary Theresa O'Flynn, Esq.
Assistant Corporation Counsel
City of New York
Office of Corporation Counsel
100 Church Street
New York, New York   10007

Joseph I. Picillo, Esq.
Deputy Attorney General
State of New Jersey
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey   08625